UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZEQUIEL MELGOZA, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. CV 17-2659 JC <br><br> MEMORANDUM OPINION AND ORDER OF REMAND |

**I.　SUMMARY**

On April 7, 2017, plaintiff Ezequiel Melgoza filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions"). The Court has taken the Motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; April 18, 2017 Case Management Order ¶ 5.

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 28, 2012, plaintiff filed an application for Disability Insurance Benefits alleging disability beginning on June 4, 2012, due to a repaired shattered right shoulder, no more than 50% range of motion in his right shoulder, stiffness of his left wrist, post left wrist surgery, anxiety, depression, migraines, neck pain, lower back pain, and a puncture in his right lung. (Administrative Record ("AR") 28, 114, 137). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on December 4, 2015. (AR 1502-24).

On January 13, 2016, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 28-37). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine, bilateral shoulder impairments, a history of left carpal tunnel release, back pain, a depressive disorder, post-traumatic stress disorder, and anxiety (AR 30); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 31); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b) with additional limitations[1] (AR 33); (4) plaintiff could not perform any past relevant work (AR 35); (5) there are jobs that exist in significant

---

[1] The ALJ determined that plaintiff was (i) unable to perform tasks at or above shoulder level bilaterally; (ii) unable to perform repetitive gripping, grasping, or torquing with the left wrist; (iii) unable to climb ladders, ropes, and scaffolds; (iv) able to occasionally climb, crouch, balance, stoop, crawl, and kneel; (v) unable to work in environments with exposure to significant hazards, including work at unprotected heights or near moving machinery; and (vi) limited to only unskilled tasks. (AR 33).

2

numbers in the national economy that plaintiff could perform, specifically rental clerk, usher, call-out operator, and addresser (AR 36); and (6) plaintiff's medically determinable impairments could not reasonably have been expected to cause the symptoms plaintiff alleged, and plaintiff's statements regarding the intensity, persistence, and limiting effects of such subjective symptoms were not entirely credible (AR 34).

On February 7, 2017, the Appeals Council denied plaintiff's application for review. (AR 6).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or equals a listing

3

in 20 C.F.R. Part 404, Subpart P, Appendix 1 (step 3), and retains the residual functional capacity to perform past relevant work (step 4).  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy.  Id.

**B.     Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard of review in disability cases is "highly deferential."  Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (citation and quotation marks omitted).  It is "more than a mere scintilla, but less than a preponderance."  Id.  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

While an ALJ's decision need not be drafted with "ideal clarity," at a minimum it must describe the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal quotation marks omitted); see generally 42 U.S.C. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based"); Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (administrative agency's determination must be set forth with clarity and specificity). Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

### C. Pertinent Step Five Legal Standards

At step five, the Commissioner must show that there is sufficient other work in the national economy a claimant can still do, taking into account the claimant's background (*i.e.*, age, education, and work experience) and residual functional capacity (*i.e.*, tasks the claimant is still able to do despite any impairment-related physical and mental limitations). 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c); see Gutierrez v. Colvin, 844 F.3d 804, 806 (9th Cir. 2016) (citing Tackett, 180 F.3d at 1100). One way the Commissioner may satisfy this burden is by obtaining testimony from an impartial vocational expert ("vocational expert" or "VE") about the type of work such a claimant is still able to perform, as well as the availability of related jobs in the

national economy. See Gutierrez, 844 F.3d at 806-07 (citation omitted); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).

When a vocational expert is consulted at step five, the ALJ typically asks the VE at the hearing to identify specific examples of occupations that could be performed by a hypothetical individual with the same characteristics as the claimant. Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (citations omitted); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (citations omitted). The VE's responsive testimony may constitute substantial evidence of a claimant's ability to perform such occupations so long as the ALJ's hypothetical question included all of the claimant's limitations supported by the record. See Hill, 698 F.3d at 1161-62 (citations omitted); Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted).

A VE's testimony generally should be consistent with the Dictionary of Occupational Titles ("DOT").[2] See Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) ("Presumably, the opinion of the VE would comport with the DOT's guidance."); see generally Gutierrez, 844 F.3d at 807 (DOT "guides the [ALJ's] analysis" at step five). To the extent it is not – *i.e.*, the VE's opinion "conflicts with, or seems to conflict with" the DOT – an ALJ may not rely on the VE's testimony at step five unless the ALJ has adequately resolved the potential conflict. Gutierrez, 844 F.3d at 807 (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)); Rounds, 807 F.3d at 1003-04 (citations omitted); SSR 00-4p, 2000 WL

---

[2] The DOT compiled by the U.S. Department of Labor "details the specific requirements for different occupations," and is the Social Security Administration's "'primary source of reliable job information' regarding jobs that exist in the national economy." Gutierrez, 844 F.3d at 807; Zavalin, 778 F.3d at 845-46 (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)); see also 20 C.F.R. §§ 404.1566(d)(1), 404.1569. Neither the DOT nor a VE's opinion, however, "automatically 'trumps'" to the extent the two conflict. Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Social Security Ruling ("SSR") 00-4p) (internal quotation marks omitted).

6

1898704, at *4 ("When vocational evidence provided by a VE [] is not consistent with information in the DOT, the [ALJ] must resolve [the] conflict before relying on the VE [] evidence to support a determination or decision that the individual is or is not disabled."). In each case where VE testimony is used, an ALJ generally must affirmatively (1) ask the VE whether there is a conflict between the expert's opinions and the DOT requirements for a particular occupation; (2) "obtain a reasonable explanation for any apparent conflict"; and (3) explain in the decision how the ALJ resolved any such conflict. Massachi, 486 F.3d at 1152-53 (quoting SSR 00-4p).

An ALJ need only resolve conflicts that are "obvious or apparent" – such as when the VE testifies that a claimant is able to perform an occupation which involves "essential," "integral" or "expected" job requirements that appear to be more than a claimant's residual functional capacity would permit. See Gutierrez, 844 F.3d at 808 (conflict is "obvious or apparent" when VE testimony is "at odds with" job requirements listed in DOT that are "essential, integral, or expected"). The extent to which an ALJ must scrutinize a VE's opinions is highly "fact-dependent." Lamear, 865 F.3d at 1205 (citation omitted). For example, "less scrutiny" is required where the VE has identified a representative occupation that is "familiar" (*e.g.*, "cashiering"). Gutierrez, 844 F.3d at 808. In such cases an ALJ may be able to resolve a potential conflict without inquiring further of the VE – *i.e.*, based on "common experience" that it is "likely and foreseeable" that a claimant with certain limitations would still be able to perform all of the "essential, integral, [and] expected" requirements the DOT described for the particular occupation. See, e.g., Gutierrez, 844 F.3d at 807-08 (*e.g.*, no "apparent or obvious conflict" between DOT listing for "cashier" occupation which requires "frequent reaching" and VE's testimony that claimant could still work as a cashier despite her inability to reach above shoulder level with her right arm given how "uncommon it is for most cashiers to have to reach overhead" at all).

7

1 | Conversely, where a representative occupation is "more obscure," ordinarily an ALJ would not be able to resolve an apparent conflict at step five based solely on "common experience," but instead would need to ask the VE to provide a more detailed explanation of the apparently conflicting opinion. Lamear, 865 F.3d at 1205 (footnote omitted); see also id. ("The ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT.") (quoting Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014)); see, e.g., Buckner-Larkin v. Astrue, 450 Fed. Appx. 626, 628-29 (9th Cir. 2011) (conflict between DOT and VE testimony adequately addressed where VE reasonably explained that deviation "was based on his own labor market surveys, experience, and research" and ALJ's decision addressed explanation).

## IV. DISCUSSION

Here, plaintiff asserts that the ALJ erred at step five in finding that plaintiff could perform the representative occupations of rental clerk (DOT § 295.357-018, 1991 WL 672589 [Furniture-Rental Consultant]), usher (DOT § 344.677-014, 1991 WL 672865), call-out operator (DOT § 209.587-010, 1991 WL 672186), and addresser (DOT § 237.367-014, 1991 WL 671797) (collectively "representative occupations") based on testimony from the vocational expert which, without explanation, deviated from the DOT. (Plaintiff's Motion at 5-8). As the Court cannot find that the ALJ's decision in this regard is supported by substantial evidence or that any error was harmless, a remand is warranted.

First, here, there is an apparent conflict between the vocational expert's testimony and the DOT. In response to a hypothetical question posed by the ALJ at the hearing, the VE opined that an individual with the same characteristics as plaintiff would be able to perform each of the representative occupations. (AR 1517-21). According to the DOT, however, the representative occupations involve reaching either occasionally (DOT §§ 295.357-018 [Furniture-Rental

Consultant]), 344.677-014 [Usher], 209.587-010 [Call-Out Operator]), or frequently (DOT § 237.367-014 [Addresser]). As plaintiff points out, "reaching" for purposes of the DOT generally "connotes the ability to extend one's hands and arms 'in any direction[.]'" Gutierrez, 844 F.3d at 808 (citing SSR 85-15, 1985 WL 56857). While the DOT listings do not indicate that the representative occupations require reaching in any specific direction, they also do not suggest that acceptable and efficient performance of such occupations would *never* require reaching at or above shoulder level. Consequently, the reaching requirements for the representative occupations appear to be inconsistent with plaintiff's inability to do any work "at or above shoulder level." Cf., e.g., Gutierrez, 844 F.3d at 808 ("[N]ot every job that involves reaching requires the ability to reach overhead."). The VE generally indicated that her testimony was consistent with the DOT (AR 1522), but provided no explanation for her opinion which essentially suggests that an individual like plaintiff would be able to perform occupations which, according to the DOT, seem to require certain activities that are beyond plaintiff's abilities.

      The Court cannot infer from common experience that it is likely or foreseeable that a rental clerk, usher, call-out operator, or addresser who, like plaintiff, is unable to do any work at or above shoulder level would still be able adequately to perform all essential, integral, and/or expected tasks for even one of the representative occupations. Indeed, the DOT suggests quite the opposite. For example, according to the DOT, the rental clerk occupation involves work at the light exertional level, which could require "pushing and/or pulling of arm [] controls," and/or "the constant pushing and/or pulling of materials," as well as occasional "[s]tooping" and "[c]rouching." (DOT § 295.657-018, 1991 WL 672589). A rental clerk, among other general tasks, typically "[r]ents furniture and accessories to customers," "[t]alks to customer[s] to determine furniture preferences and requirements," "[g]uides or accompanies customer[s] through showroom, answers questions, and advises customer on compatibility of various

9

styles and colors of furniture items." (DOT § 295.657-018, 1991 WL 672589). Common experience strongly suggests that a rental clerk could very likely need to reach at or above shoulder level in order adequately to perform the "essential, integral, or expected tasks" of the position (*e.g.*, it is reasonably foreseeable that a rental clerk might need to reach above shoulder level while showing furniture to a customer, especially if the clerk was crouching or stooping to display the lower portion of a particular item).

The usher occupation, according to the DOT, also involves work at the light exertional level and occasional stooping and crouching, and requires a worker, among other tasks, to "[a]ssist[] patrons at entertainment events to find seats . . . and locate facilities, such as restrooms and telephones . . . [d]istribute[] programs to patrons," and "[a]ssist[] other workers to change advertising display[s]." (DOT § 344.677-014, 1991 WL 672865). It is neither "unlikely" nor "unforeseeable" that an usher performing his job duties would at various points be required to reach at or above shoulder level (*e.g.*, while pointing patrons in the direction of seats or facilities located on a higher level of an amphitheater or helping a colleague replace an advertising poster on the wall).

Similarly, the DOT lists the addresser and call-out operator occupations as involving work at the sedentary exertional level, thus, in part, requiring "sitting most of the time." (DOT §§ 209.587-010, 1991 WL 672186 [call-out operator], 237.367-014, 1991 WL 671797 [addresser]). It is reasonably foreseeable that an addresser or call-out operator would need to reach at or above shoulder level from a sitting position at regular points during the day while performing one of the essential, integral, or expected tasks of either position (*e.g.*, an addresser while "sort[ing] mail", or a call-out operator while "using [a] telephone" or entering data into a computer). (DOT §§ 209.587-010, 1991 WL 672186, 237.367-014, 1991 WL 671797).

///

Second, since neither the VE nor the ALJ here acknowledged the apparent conflict between the VE's testimony and the DOT's requirements for the representative occupations, neither made any attempt to explain or justify such conflict. (AR 36-37, 1516-22). Accordingly, the VE's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's determination at step five that plaintiff could perform any of the representative occupations. See Rounds, 807 F.3d at 1003 (citations omitted).

Third, this Court cannot confidently conclude that the ALJ's error was harmless. As discussed above, it cannot fairly be determined from the instant record, the DOT, or even common experience whether the reaching required by any of the representative occupations could be performed in an acceptable and efficient manner by a worker who, like plaintiff, is unable to do any work at or above shoulder level bilaterally. See, e.g., Lamear, 865 F.3d at 1206 (court cannot say ALJ's failure to inquire more specifically of vocational expert was harmless error where unable to determine from the record, the DOT, or common experience whether the VE identified representative occupations with DOT requirements that exceed a claimant's abilities); Zavalin, 778 F.3d at 848 (ALJ's failure adequately to reconcile apparent conflict between VE and DOT not harmless error where court was unable to determine from "mixed record" whether substantial evidence supported ALJ's step-five finding that claimant could perform other work the VE identified) (citing Massachi, 486 F.3d at 1154). In addition, defendant points to no persuasive evidence in the record which supports the VE's apparent deviation from the DOT or which could otherwise support the ALJ's non-disability determination at step five. See generally Zavalin, 778 F.3d at 846 ("ALJ's failure to resolve an apparent inconsistency may leave . . . a gap in the record that precludes [court] from determining whether the ALJ's decision is supported by substantial evidence") (citing Massachi, 486 F.3d at 1154).
///

|   |   |
|---|---|
| 1 | Finally, the Court rejects defendant's contention that "[p]laintiff waived his |
| 2 | right to challenge the VE's upper extremity testimony when he failed to raise the |
| 3 | issue or challenge that testimony both at hearing and before the Appeals Council." |
| 4 | (Defendant's Motion at 6) (citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. |
| 5 | 1999); Shaibi v. Berryhill, 870 F.3d 874, 881 (9th Cir. 2017), opinion amended |
| 6 | and superseded on denial of reh'g, Shaibi v. Berryhill ("Shaibi II"), __ F.3d __, |
| 7 | 2017 WL 7798666 (9th Cir. Aug. 22, 2017)).  Such a waiver does not occur |
| 8 | where, like here, the ALJ failed adequately to resolve an apparent conflict between |
| 9 | the VE's testimony and *the DOT*.  See Shaibi II, __ F.3d at __, 2017 WL 7798666, |
| 10 | at *6 ("[A]n ALJ is required to investigate and resolve any apparent conflict |
| 11 | between the VE's testimony and the DOT, regardless of whether a claimant raises |
| 12 | the conflict before the agency.") (citing SSR 00-4P; Lamear, 865 F.3d at 1206-07; |
| 13 | Massachi, 486 F.3d at 1152-54). |

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[3]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   March 8, 2018

  /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[3]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).

12